1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brandon M. Tesser, Esq. (SBN 168476)
TESSER | GROSSMAN, LLP
11990 San Vicente Blvd., Ste. 300
Los Angeles, California 90049
Tel:  (310) 207-4558
Fax:  (424) 256-2689
E-Mail: brandon@tessergrossman.com

Attorneys for Plaintiff
Aquamen Entertainment LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

AQUAMEN ENTERTAINMENT,
LLC, a California limited liability
company,

                      Plaintiff,

      v.

PIGMENTAL, LLC aka PIGMENTAL
STUDIOS, LLC aka PIGMENTAL
STUDIOS, INC. aka PIGMENTAL
STUDIOS, a Delaware limited liability
company; MARINA MARTINS, an
individual; and DOES 1 through 50,
inclusive;

                     Defendants.

Case No.: 2:17-cv-00058

**COMPLAINT FOR:**

1) **COPYRIGHT INFRINGEMENT;**
2) **FRAUD;**
3) **MONEY HAD AND RECEIVED;**
4) **INTENTIONAL INTERERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
5) **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**
6) **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200**
7) **DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

- 1 -

**COMPLAINT**

Plaintiff Aquamen Entertainment, LLC alleges as follows:

## THE PARTIES

1.     Plaintiff Aquamen Entertainment LLC ("**Plaintiff**") is, and at all relevant times herein mentioned was, a limited liability company, organized and existing under the laws of the State of California, with its principal place of business in Orange County, California.

2.     Plaintiff is informed and believes, and thereon alleges, that defendant Pigmental, LLC aka Pigmental Studios, LLC aka Pigmental Studios, Inc. aka Pigmental Studios ("**Pigmental**") is, and at all relevant times herein mentioned was, a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business now located in Washington, D.C. Plaintiff is further informed and believes, and thereon alleges, that during certain relevant times mentioned herein, Pigmental's principal place of business was in Los Angeles, California, and within this judicial district.

3.     Plaintiff is informed and believes, and thereon alleges, that defendant Marina Martin ("**Martin**") is, and at all relevant times herein mentioned was, an individual residing in Arcadia, California, and within this judicial district. Plaintiff is informed and believes and thereon alleges that, at all times pertinent hereto, Martin was an owner, member, partner, principal, director, officer, or primary shareholder of Pigmental, and did and does dominate, influence and control Pigmental; that a unity of interest and ownership existed and exists between and among Martin and Pigmental; that Martin and Pigmental did not and do not maintain any separateness or individuality between or among themselves; such that Martin and Pigmental failed and fail to maintain the formalities requisite to the status of a corporation; that Martin and Pigmental have commingled their personal and company funds; that Pigmental was and is undercapitalized and a mere business shell that Martin used and uses as a conduit for her personal business, property, and

**COMPLAINT**

affairs; that Martin was and is the alter ego of Pigmental; and therefore that there was and is such a unity of interest, ownership, and control between and among Martin and Pigmental that adherence to the fiction of the separate existence of Pigmental would, under these circumstances, permit an abuse of the corporate privilege and sanction and promote injustice, unfairness, and inequity if Plaintiff were permitted to pursue and satisfy its claims herein only against and out of the assets of Pigmental, which assets have not been and will not be sufficient to meet Pigmental's obligations to Plaintiff.

4.     Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as Does 1 through 50, inclusive, and therefore sues those defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of such Doe defendants when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a Doe defendant is responsible in some manner for the events and happenings referred to herein and proximately thereby caused damages and injury to Plaintiff.  The Doe defendants and Pigmental are referred to collectively herein as "**Defendants**."

5.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein mentioned, each of the Defendants was the agent, servant and employee of each of the remaining Defendants, and in doing the acts herein alleged, each was acting within the course and scope of said agency and employment.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claims alleged herein relating to the Copyright Act (17 U.S.C. §§ 101, 501) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents and trademarks).  This Court also has

subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  This Court has subject matter jurisdiction over the related state law claims alleged herein under 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and within this judicial district, the acts of infringement complained of herein are occurring in the State of California and within this judicial district, Defendants have caused injury to Plaintiff and its intellectual property within the State of California and within this judicial district, and the contracts at issue where entered into within the State of California and within this judicial district.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1391(b)(3) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and because Defendants are subject to personal jurisdiction in this district with respect to the claims alleged herein.

## GENERAL ALLEGATIONS

9.     Korean filmmaker Jeong-jung Kim ("**Kim**")  conceived of a science fiction adaptation of the classic Chinese novel, *Journey to the West*, to tell the origin story of Sun WuKong (commonly known as the Monkey King), including aliens and robots. Kim partnered with Chinese producer Gary Zhang ("**Zhang**") to form Plaintiff, a film production company, to produce Kim's adapted story in a $40 Million, 3-D animated feature film tentatively titled, *Kong, the Origin* (the "**Picture**").

10.     In early 2014, Kim and Zhang met Martins. Plaintiff is informed and believes, and thereon alleges, that Martins is the CEO and a co-founder of defendant Pigmental, a full service animation studio.

**COMPLAINT**

11. Martins convinced Kim and Zhang that Pigmental had the experience and talent to transform Plaintiff's Chinese language treatment of the Picture into a completed development package, suitable for investor presentations and ready for pre-production (*i.e.*, the so-called "design phase" of the project).

12. Thereafter, Plaintiff and Pigmental entered into a written agreement with regard to the design phase of the Picture, the Kong Pre-Production Agreement, dated July 7, 2014, for a term of four (4) months (the "**Pre-Production Agreement**").

13. Plaintiff is informed and believes, and thereon alleges, that at the time Plaintiff and Pigmental entered into the Pre-Production Agreement, Pigmental's principal place of business was in Los Angeles, California, and within this judicial district.

14. Under Section 2 of the Pre-Production Agreement, Pigmental agreed that it would invest $900,000.00 in "cashflow pre-production funding" in the Picture, as follows:

> "**2. Compensation:**
>
> Provided the Picture is produced as provided herein, Pigmental shall be entitled to receive the following compensation:
>
> a) Pigmental Contribution: Pigmental shall cashflow pre-production funding through its cashflow facilities of $900,000 to the Picture which will be converted into equity shares of the SPV, pari passu with other equity investors. Pigmental's investment (which may be comprised of pre-production services to the Picture, which shall include accounting including receipts and invoices) will be contributed in three installments:
> $300,000 for July 2014
> $300,000 for August 2014
> $300,000 for September 2014"

- 5 -
**COMPLAINT**

15.    Section 4 of the Pre-Production Agreement provides that any and all elements created, prepared or produced for the Picture by Pigmental (the "**Kong-Related Works**") constitute a work for hire as to which Plaintiff is deemed the sole author, as follows:

"**4.  Rights**:

Pigmental acknowledges that all of the results and proceeds of Pigmental's services hereunder are and will be created by Pigmental as a 'work-made-for-hire' specially ordered or commissioned by Aquamen with Aquamen being deemed the sole author of all such results and proceeds.  In the event such results and proceeds are determined not to be a 'work-made-for-hire,' then Pigmental hereby irrevocably and exclusively assigns all rights therein and thereto (including without limitation all copyrights and renewals and extensions thereof) to Aquamen.  Pigmental acknowledge [sic] that Aquamen has the right to use, refrain from using, change, modify, add to, subtract from and to exploit, advertise, exhibit and otherwise turn to account any or all of the foregoing in any manner and in any and all media, whether now known or hereafter devised, through the universe, in perpetuity, in all languages, as Aquamen in its sole discretion shall determine.  As such, Aquamen shall be entitled to and shall solely and exclusively own, in addition to Pigmental's services hereunder, all results and proceeds thereof (including but not limited to all rights, through the world, of copyright, trademark, performance, broadcast and exhibition of any art or method now known or hereafter devised, including radio broadcasting, theatrical and non-theatrical exhibition, and exhibition by the medium of television or otherwise), whether such results and proceeds consist of literary, dramatic, musical, compositions, creations or production, together with the rights generally known in the field of literary and musical endeavor as the 'moral rights of authors' in and/or to any musical and/or literary proceeds of Pigmental's services.  Pigmental assigns and transfers to

- 6 -
**COMPLAINT**

> Aquamen all the foregoing without reservation, condition, or limitation, and no right of any kind, nature or description is reserved by Pigmental. Pigmental hereby waives any and all so called 'moral rights' of authors. …"

16.     The Kong-Related Works prepared by Pigmental in or about the summer of 2014 include a so-called "Official Kong Teaser (2016)" trailer and other artwork, graphics, images and elements related to the Picture now displayed on Pigmental's website, www.pigmentalstudios.com.   The trailer continues to be displayed on the website despite Plaintiff's requests that it be removed.

17.     Plaintiff is informed and believes, and thereon alleges, that all of the Kong-Related Works were created or produced by Pigmental prior to December 16, 2014.  Plaintiff is the owner of the copyrights in the Picture and the Kong-Related Works (together, the "**Copyrighted Works**").

18.     There is no provision in the Pre-Production Agreement granting Pigmental a license or any other right to display, publicize, copy, distribute or otherwise use any of the Copyrighted Works for its own marketing or promotional purposes, or for any other purpose.

19.     Plaintiff is informed and believes, and thereon alleges, that in or about early 2015, Pigmental relocated its principal place of business to Washington, D.C., but that Pigmental still maintains a business presence and work staff in Los Angeles, California.

20.     After the Pre-Production Agreement expired, Plaintiff and Pigmental entered into a second written agreement, the Co-Production Agreement Aquamen Entertainment and Pigmental Studios, dated December 16, 2014 (the "**Co-Production Agreement**"), with regard to development and production of the Picture.

21.     In Section 7 of the Co-Production Agreement, Pigmental was granted a 25% share in any exhibition profits from the Picture, should it be completed, in

exchange for the $900,000.00 investment that Pigmental, pursuant to the terms of the Pre-Production Agreement, was to have made in the pre-production development of the Picture prior to December 16, 2014, as follows:

> "… In consideration of their respective contributions to pre-production development prior to the date of this Agreement, nine hundred thousand dollars ($900,000.00) from Pigmental, and six hundred fifty thousand dollars ($650,000.00) from Aquamen, each party shall be entitled to participate in profits from the Picture in a ratio of twenty-five percent (25%) to Pigmental and seventy-five percent (75%) to Aquamen. …"

22.    Section 13.a of the Co-Production Agreement provides that Plaintiff will be the sole owner of the copyrights in any new elements created, prepared or produced by Pigmental related to the Picture (collectively, the "**Additional Kong-Related Works**"), as follows:

> "13. PROPRIETARY RIGHTS.
>
> a.    Pictures and Ancillary Rights.   The copyright, trademarks and other intellectual property rights in and to the Pictures, all new and unique characters and story elements thereof and the audio-visual images thereof, the Ancillary Rights relating thereto and excluding any trademarks and other intellectual property rights not uniquely associated with the Picture or Ancillary Rights related thereto are the sole and exclusive right and obligation of Aquamen to register, administer and enforce …"

As used hereinafter, the term "**Copyrighted Works**" includes the Additional Kong-Related Works.

///

///

**COMPLAINT**

23.    Section 13.b of the Co-Production Agreement governs Pigmental's use of the Copyrighted Works for marketing and promotional use, as follows:

> "b.  Corporate Promotional Use.  Each party shall have the right to use the characters, trademarks and all unique story elements of the Picture and excerpts of the Picture not more than five (5) minutes in length for purposes of corporate identification and marketing, including without limitation in or on any of the following:  corporate advertising and promotional materials, stationery, stock certificates, business cards, annual reports and other shareholder materials, recruiting materials, press kits (multimedia and printed), corporate trade shows, Internet web pages and in corporate facilities.  Pigmental shall include a copyright notice in the form "© Aquamen" on all such materials of Aquamen.  Aquamen will grant Pigmental access to any key advertising artwork and materials for the foregoing purposes."

24.    After the parties entered into the Co-Production Agreement, Plaintiff repeatedly requested that Pigmental provide Plaintiff with documentation sufficient to verify that Pigmental had, in fact, contributed $900,000.00 toward the development costs of the Picture prior to December 16, 2014.  Pigmental failed and refused to comply with those requests.

25.    Plaintiff is informed and believes, and thereon alleges, that Pigmental did not, in fact, contribute $900,000.00 towards development of the Picture prior to December 16, 2014, as it had promised to do.  Plaintiff is also informed and believes, and thereon alleges, that certain of the internally generated invoices provided to Plaintiff by Pigmental were deliberately padded, inflated and inaccurate because, among other reasons, they include amounts purportedly but not actually paid to third parties by Pigmental as well as amounts for overhead, alleged services and purported expenses not properly attributable to the Picture and/or which were

**COMPLAINT**

not actually provided and/or incurred by Pigmental.  Plaintiff is further informed and believes, and thereon alleges, that Pigmental falsely claimed such inflated, unpaid and improper amounts nevertheless comprised a portion of its required $900,000.00 contribution to the development of the Picture prior to December 16, 2014.

26.    On March 12, 2016, Plaintiff notified Pigmental in writing that if Pigmental did not, on or before April 11, 2016, comply with Plaintiff's repeated requests for documentation verifying the actual amount of Pigmental's contribution to the development of the Picture prior to December 16, 2014, the Co-Production Agreement would be terminated (the "**Termination Notice**").

27.    In response to the Termination Notice, Pigmental claimed that the internally generated invoices it had previously submitted to Plaintiff were all that Pigmental was required to give Plaintiff.

28.    As of the filing of this Complaint, and in breach of the covenant of good faith and fair dealing implied in the Co-Production Agreement, Pigmental has failed and refused to provide any of the documentation requested by Plaintiff and necessary to verify the actual amount of Pigmental's contribution to the development of the Picture prior to December 16, 2014.   Therefore, the Co-Production Agreement was terminated by Plaintiff on April 12, 2016.

29.    Notwithstanding Plaintiff's termination of the Co-Production Agreement, Pigmental has continued to falsely claim on its website and to the public that it has an ongoing production role in the Picture.  In addition, Pigmental has continued, without Plaintiff's permission or authorization, to promote and market itself on its website using the Copyrighted Works and, on information and belief, has otherwise continued to exploit the Copyrighted Works.

30.    Accordingly, on October 17, 2016, Plaintiff, through its counsel, sent a written notice to Pigmental demanding that it (i) cease and desist from holding itself

out as having any affiliation or continued involvement with Plaintiff and the Picture, (ii) remove all references to the Picture form its website, including any mention that Pigmental is currently involved in the Picture, and (iii) remove all artwork, images, and videos relating to the Picture (*i.e.*, the Copyrighted Works) from Pigmental's website (the "**Cease & Desist Notice**").

31.     Pigmental ignored and continues to ignore the Cease & Desist Notice. As of the date this Complaint was filed, Pigmental was still falsely holding itself out to the public as being affiliated with Plaintiff and as having continued involvement in the production of the Picture, and was still displaying the Copyrighted Works on its website, using such Copyrighted Works to promote and market itself and, on information and belief, otherwise exploiting the Copyrighted Works.

32.     Plaintiff is informed and believes, and thereon alleges, that Pigmental also contends it is still entitled, pursuant to the Co-Production Agreement, to a share of the exhibition profits of the Picture.

33.     Defendants' conduct described above is damaging Plaintiff by, among other ways, interfering with and disrupting Plaintiff's ongoing efforts to recruit talent, engage investors and otherwise promote, develop and produce the Picture.  In addition, Plaintiff is informed and believes, and thereon alleges, that Pigmental's false claim that it is still affiliated with Plaintiff and involved in producing the Picture is creating damaging confusion in the marketplace.

## <u>COUNT 1</u>

### **Copyright Infringement - 17 U.S.C. §§ 106 and 501**

### **(Plaintiff against all Defendants)**

34.     Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 33 above, inclusive.

///

///

**COMPLAINT**

35.   Plaintiff filed an application for a copyright registration with the United States Copyright Office for the Copyrighted Works on December 12, 2016, as Case No. 1-4248847281, and is awaiting the issuance of that registration.

36.   Through their conduct alleged herein, Defendants have infringed Plaintiff's copyright in the Copyrighted Works in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

37.   Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

38.   As a direct and proximately result of said infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

39.   Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

40.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.   Plaintiff is informed and believes and on that basis alleges that, unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works.   Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to preliminary and permanent injunctive relief (a) prohibiting Defendants from further infringing Plaintiff's copyright, and (b) ordering Defendants to (i) remove the Copyrighted Works from Pigmental's website, (ii) to cease and refrain from any further publication, use or other exploitation of the Copyrighted Works, and (iii) to destroy all copies of the Copyrighted Works, and/or other materials made in violation of Plaintiff's exclusive rights.

///

///

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### Fraud

### (Plaintiff against all Defendants)

41.    Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 40 above, inclusive.

42.    Defendants misrepresented to Plaintiff certain facts including, without limitation that all of the invoices submitted by Pigmental to Plaintiff were accurate and included only amounts properly charged to the development of the Picture, and that the amounts reflected in those invoices satisfied Pigmental's obligation under the Pre-Production Agreement to invest $900,000.00 in the development of the Picture prior to December 15, 2014 (collectively, the "**Misrepresentations**").

43.    Contrary to the Misrepresentations made by Defendants, and on information and belief, the truth was that Pigmental's invoices to Plaintiff were deliberately padded, inflated and inaccurate because, among other reasons, they include amounts purportedly but not actually paid to third parties by Pigmental as well as amounts for overhead, alleged services and purported expenses not properly attributable to the Picture and/or which were not actually provided and/or incurred or paid for by Pigmental.  Plaintiff is further informed and believes, and thereon alleges, that Pigmental falsely claimed such inflated, unpaid and improper amounts nevertheless comprised the entirety of its purported $900,000.00 contribution to the development of the Picture prior to December 16, 2014.

44.    Each of the Misrepresentations made by Defendants was false, and Defendants knew or should have known such Misrepresentations were false when they made them.

45.    In making their Misrepresentations, Defendants intended that Plaintiff would rely on such Misrepresentations when continuing to pay Pigmental's inflated and inaccurate invoices and when agreeing, in the Co-Production Agreement, to

**COMPLAINT**

grant Pigmental a 25% share in any exhibition profits from the Picture, should it be completed, in exchange for the $900,000.00 investment that Pigmental, pursuant to the terms of the Pre-Production Agreement, was to have made in the pre-production development of the Picture prior to December 16, 2014.

46.    As Defendants intended, Plaintiff did rely on their Misrepresentations, which reliance was and is reasonable.    Plaintiff's reliance included, without limitation, paying the inflated and inaccurate invoices submitted by Pigmental to Plaintiff and agreeing, in the Co-Production Agreement, to granting Pigmental a 25% share in any exhibition profits from the Picture, should it be completed, in exchange for the $900,000.00 investment that Pigmental, pursuant to the terms of the Pre-Production Agreement, was to have made in the pre-production development of the Picture prior to December 16, 2014.

47.    As a direct and proximate result of Defendants' fraud, Plaintiff has sustained substantial damages in an amount presently unknown, but which Plaintiff is informed and believes, and thereon alleges, exceeds the jurisdictional minimum of this Court, such sum to be precisely determined according to proof at trial.    Plaintiff will seek leave of this Court to amend this Complaint to allege the exact amount of damages when it has been ascertained.    Plaintiff is also entitled to an accounting of and a constructive trust with respect to the amounts that Plaintiff overpaid to Pigmental by virtue of its inflated and inaccurate invoices.

48.    By reason of the foregoing acts and omissions, Defendants have been guilty of oppression, fraud, and malice.    Therefore, in addition to actual compensatory damages, Plaintiff is entitled to recover exemplary and punitive damages from Defendants, and each of them, in such amount as proof at trial may indicate is appropriate.

///

///

- 14 -
**COMPLAINT**

## COUNT III

### Money Had and Received

### (Plaintiff against all Defendants)

49.     Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 48 above, inclusive.

50.     Within the last four years, Defendants received money from Plaintiff, in payment of Pigmental's inflated and inaccurate invoices that was intended to be used for the benefit of Plaintiff.

51.     Plaintiff is informed and believes, and thereon alleges, that the money received by Defendants was not used for the benefit of Plaintiff.

52.     The amount now due and owing to Plaintiff by Defendants is presently unknown, but Plaintiff is informed and believes, and thereon alleges, that such amount exceeds the jurisdictional minimum of this Court, such sum to be precisely determined according to proof at trial.  Plaintiff will seek leave of this Court to amend this Complaint to allege the exact amount of damages when it has been ascertained.

## COUNT IV

### Intentional Interference with Prospective Economic Advantage

### (Plaintiff against all Defendants)

53.     Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 52 above, inclusive.

54.     Plaintiff had an economic relationship with investors who have already invested in the Picture and/or with whom Plaintiff is or was in discussions concerning their future investment in the Picture which contained a probable future economic benefit and advantage to Plaintiff.

55.     Defendants knew or should have known of the existence of the aforesaid economic relationships.

**COMPLAINT**

56.   Defendants intentionally engaged in acts and/or conduct designed to interfere with or disrupt the aforesaid economic relationships, including the following acts, among others:

a.   Failing and refusing to provide Plaintiff with the documentation sufficient and necessary to account for amounts Pigmental had allegedly actually spent on the development of the Picture prior to December 16, 2014, including the $900,000.00 purportedly invested by Pigmental;

b.   Submitting to Plaintiff invoices internally generated by Pigmental that are not accurate in that such invoices, among other things, include amounts which Pigmental purportedly but did not actually pay to third parties;

c.   Refusing to remove the Copyrighted Works from Pigmental's website and/or otherwise cease and desist from any public display of the Copyrighted Works;

d.   Falsely claiming that Pigmental is still affiliated with Plaintiff and involved in producing the Picture;

e.   Falsely claiming that Pigmental is still entitled to a percentage of the exhibition profits from the Picture;

f.   By virtue of their continued unauthorized use of the Copyrighted Works and false claims concerning Pigmental's affiliation with Plaintiff and involvement in production of the picture, creating damaging confusion in the marketplace; and

g.   Otherwise disrupting and interfering with Plaintiff's efforts to recruit talent, engage investors and otherwise promote, develop and produce the Picture.

57.   As a direct and proximate result of Defendants' intentional interference, Plaintiff has sustained substantial damages in an amount presently

**COMPLAINT**

unknown, but which Plaintiff is informed and believes, and thereon alleges, exceeds the jurisdictional minimum of this Court, such sum to be precisely determined according to proof at trial.  Plaintiff will seek leave of this Court to amend this Complaint to allege the exact amount of damages when it has been ascertained.

58.    By reason of the foregoing acts and omissions, Defendants have been guilty of oppression, fraud, and malice.    Therefore, in addition to actual compensatory damages, Plaintiff is entitled to recover exemplary and punitive damages from Defendants, and each of them, in such amount as proof at trial may indicate is appropriate.

## COUNT V

### Negligent Interference with Prospective Economic Advantage

### (Plaintiff against all Defendants)

59.    Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 58 above, inclusive.

60.    Plaintiff had an economic relationship with investors who have already invested in the Picture and/or with whom Plaintiff is or was in discussions concerning their future investment in the Picture which contained a probable future economic benefit and advantage to Plaintiff.

61.    Defendants knew or should have known of the existence of the aforesaid economic relationships.

62.    Defendants knew or should have known that the aforesaid economic relationships would be disrupted if they failed to act with reasonable care.

63.    Nevertheless, Defendants failed to act with reasonable care in that, among other things, Defendants negligently engaged, without limitation, in the following wrongful acts or conduct which interfered with and/or disrupted the aforesaid economic relationships:

///

- 17 -
**COMPLAINT**

a.      Failing and refusing to provide Plaintiff with the documentation sufficient and necessary to account for amounts Pigmental had allegedly actually spent on the development of the Picture prior to December 16, 2014, including the $900,000.00 purportedly invested by Pigmental;

b.      Submitting to Plaintiff invoices internally generated by Pigmental that are not accurate in that such invoices, among other things, include amounts which Pigmental purportedly but did not actually pay to third parties;

c.      Refusing to remove the Copyrighted Works from Pigmental's website and/or otherwise cease and desist from any public display of the Copyrighted Works;

d.      Falsely claiming that Pigmental is still affiliated with Plaintiff and involved in producing the Picture;

e.      Falsely claiming that Pigmental is still entitled to a percentage of the exhibition profits from the Picture;

f.      By virtue of their continued unauthorized use of the Copyrighted Works and false claims concerning Pigmental's affiliation with Plaintiff and involvement in production of the picture, creating damaging confusion in the marketplace; and

g.      Otherwise disrupting and interfering with Plaintiff's efforts to recruit talent, engage investors and otherwise promote, develop and produce the Picture.

64.     As a direct and proximate result of Defendants' negligent interference, Plaintiff has sustained substantial damages in an amount presently unknown, but which Plaintiff is informed and believes, and thereon alleges, exceeds the jurisdictional minimum of this Court, such sum to be precisely determined

///

**COMPLAINT**

1 according to proof at trial.  Plaintiff will seek leave of this Court to amend this
2 Complaint to allege the exact amount of damages when it has been ascertained.

3 <u>**COUNT VI**</u>

4 **Violation of California's Unfair Competition Law,**

5 **Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

6 **(Plaintiff against all Defendants)**

7   65.   Plaintiff incorporates herein by this reference each and every allegation
8 contained in paragraphs 1 through 64 above, inclusive.

9   66.   Without Plaintiff's authorization, Defendants have continued to use the
10 Copyrighted Works to, among other improper uses, promote and market Pigmental
11 and its business.

12   67.   The unauthorized use of the Copyrighted Works constitutes direct
13 infringements of Plaintiff's copyright and ownership interests in the Copyrighted
14 Works, in violation of the California Unfair Business Practices Act, §§ 17200, *et*
15 *seq*.

16   68.   The above alleged conduct by Defendants was and is intentional,
17 malicious and wanton in that they have infringed, and continue to infringe, on the
18 Plaintiff's copyright in the Copyrighted Works (a) with full knowledge that Plaintiff
19 owns and has the exclusive right to use and license the Copyrighted Works; (b) with
20 the intention of causing a likelihood of confusion and mistake and to deceive; and
21 (c) after notice from Plaintiff to cease their infringing activities.

22   69.   As a result of the aforementioned conduct, Plaintiff has suffered, and
23 continues to suffer, irreparable harm to its goodwill and reputation, for which there
24 is no adequate remedy at law.  Plaintiff is informed and believes and on that basis
25 alleges that, unless enjoined and restrained by this Court, Defendants will continue
26 to infringe Plaintiff's rights in the Copyrighted Works.  Pursuant to California
27 Business and Professions Code § 17203, Plaintiff is entitled to preliminary and
28

- 19 -
**COMPLAINT**

permanent injunctive relief (a) prohibiting Defendants from further infringing Plaintiff's copyright, and (b) ordering Defendants to (i) remove the Copyrighted Works from Pigmental's website, (ii) to cease and refrain from any further publication, use or other exploitation of the Copyrighted Works, and (iii) to destroy all copies of the Copyrighted Works, and/or other materials made in violation of Plaintiff's exclusive rights.

## COUNT VII

### Declaratory Relief - 28 U.S.C. § 2202

### (Plaintiff against all Defendants)

70.    Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 69 above, inclusive.

71.    An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, relating to their respective rights, obligations, and interests in and to the Copyrighted Works.  Plaintiff contends that:

      a.    Plaintiff owns and has the exclusive right to use and license each of the Picture, the Kong-Related Works and the Additional Kong-Related Works;

      b.    The Co-Production Agreement was terminated effective April 12, 2016;

      c.    As of April 12, 2016, Defendants no longer had any license or other right to continue displaying the Kong-Related Works or any of the other Copyrighted Works on Pigmental's website or elsewhere, or to otherwise use any of the Copyrighted Works for purposes of promoting and marketing themselves or their businesses or for any other purpose once permitted under the Co-Production Agreement prior to its termination, or to continue representing to the public that Pigmental is affiliated with Plaintiff and/or still involved in the production of the Picture; and

d.      In the event the Picture is completed, Pigmental is not entitled to share in any portion of the exhibition profits from the Picture.

72.     Plaintiff is informed and believes, and thereon alleges, that Defendants dispute each of Plaintiff's contentions and contend otherwise.

73.     Plaintiff desires a judicial determination of its rights, obligations and interests in and to the Picture and other Copyrighted Works, and a declaration that Plaintiff's contentions, as hereinabove set forth, are correct.  Such a judicial declaration is necessary and proper to avoid a multiplicity of suits.  Moreover, the requested judicial declaration will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.      For damages in an amount in excess of $75,000, to be determined at the trial, or as otherwise permitted by law;

2.      For an accounting of, and the imposition of a constructive trust with respect to, (a) Defendants' profits attributable to their infringements of Plaintiff's copyright in the Copyrighted Works; and (b) the amounts that Plaintiff overpaid to Pigmental by virtue of its inflated and inaccurate invoices;

3.      For a preliminary and permanent injunction (a) prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright in the Copyrighted Works; (b) ordering Defendants to (i) remove the Copyrighted Works from Pigmental's website, (ii) cease and refrain from any further publication, use or other exploitation of the Copyrighted Works, and (iii) destroy all copies of the Copyrighted Works, and/or other materials made in violation of Plaintiff's exclusive rights; and (c)

- 21 -
**COMPLAINT**

ordering Pigmental to cease and desist from claiming that it is in any affiliated with Plaintiff or still involved in the production of the Picture;

4.      For a judicial declaration that (a) Plaintiff owns and has the exclusive right to use and license each of the Pictures, the Kong-Related Works and the Additional Kong-Related Works; (b) the Co-Production Agreement was terminated effective April 12, 2016; (c) as of April 12, 2016, Defendants no longer had any license or other right to continue displaying the Kong-Related Works or any of the other Copyrighted Works on Pigmental's website or elsewhere, or to otherwise use any of the Copyrighted Works for purposes of promoting and marketing themselves or their businesses or for any other purpose once permitted under the Co-Production Agreement prior to its termination, or to continue representing to the public that Pigmental is affiliated with Plaintiff and/or still involved in the production of the Picture; and (d) in the event the Picture is completed, Pigmental is not entitled to share in any portion of the exhibition profits from the Picture;

5.      For prejudgment interest according to law; and

6.      For such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the Local Rules, Plaintiff demands trial by jury for all the issues pleaded herein so triable.

DATED:  January 4, 2017                    TESSER | GROSSMAN LLP


                                                          By      */s/ Brandon M. Tesser*

- 22 -

**COMPLAINT**